```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
_____
                                   )
UNITED STATES OF AMERICA           )
                                   )
                                   )
     v.                            )
                                   )   Cr. No. 20-012 WES
                                   )
JUAN GUERRERO,                     )
                                   )
           Defendant.              )
_____)
```

## AMENDED OPINION AND ORDER

WILLIAM E. SMITH, District Judge.

Before the Court is Juan Guerrero's Motion to Suppress, ECF No. 7. For the reasons that follow, the Motion is GRANTED.

I. Procedural History

On February 11, 2020, Guerrero was indicted on one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). Guerrero subsequently filed the instant Motion to Suppress, and the Court held an evidentiary hearing via Zoom on October 29, 2020. Officers William Sherrill and Kalvin Rosado of the Providence Police Department testified, and several exhibits, including body camera video footage from four officers, were introduced into evidence.[1] The Court heard argument on November 2, 2020.

---

[1] Aside from a single exception, infra note 6, the Court fully credits the testimony of both officers.

II.  Factual Background

In the early morning of October 21, 2019, while patrolling in separate cruisers, Officers Sherrill and Rosado received a radio call stating that shots had been fired.  See Oct. 29, 2020 Hr'g Tr. 9-10, 82-83.  As the officers drove towards the reported location, they observed a dark BMW sedan speeding in the opposite direction, about half a mile from the scene of the crime.  See id. at 10-16, 39-40, 84.  The officers reversed course and pursued the vehicle.  See id. at 16-17, 22-23.  As they got close, the BMW turned onto a side street.  See id. at 17.  Officer Sherrill activated his vehicle's lights and used a series of tones to indicate that the BMW should pull over, but the driver – later learned to be Guerrero - continued to drive recklessly, making four turns in quick succession.  See id. at 18-19, 21, 40.  After the BMW eventually stopped, the officers approached with weapons drawn.  See id. at 23.  More officers soon arrived.  See Gov't Ex. 5, Lewis Body Camera, at 0:00–0:20.

Guerrero was in the driver's seat, and a sixteen-year-old was in the front passenger's seat.  See Oct. 29, 2020 Hr'g Tr. 25-29, 34.  Both were ordered to exit the vehicle, and the passenger fully complied.  See Gov't Ex. 4, Rosado Body Camera, at 0:30–1:45.  For officer security, the passenger was handcuffed and placed in a police vehicle.  Id. at 1:05-1:40; Oct. 29, 2020 Hr'g Tr. 88.  The officers planned to release the juvenile, though, and at the end

of the encounter they contacted his mother and drove him home. Oct. 29, 2020 Hr'g Tr. 88-90.

Guerrero, on the other hand, initially failed to follow police commands to exit the vehicle and to lie on the ground. See id. at 27-29; Gov't Ex. 4, at 0:00-1:00. After repeated orders he complied, at which point he was handcuffed and placed in a police vehicle. See Oct. 29, 2020 Hr'g Tr. 27-29; Gov't Ex. 4, at 0:10-1:38. But, unlike his companion, Guerrero was never going to be released, as the officers considered him to be under arrest for eluding law enforcement. See Oct. 29, 2020 Hr'g Tr. 31-32, 96.

During these events, multiple officers began to search the BMW. See Gov't Ex. 3, Sherrill Body Camera, at 0:17-1:18; Gov't Ex. 4, at 1:45-4:28. Inside of a backpack in the back seat area, an officer found ammunition, which Guerrero now seeks to suppress. See Oct. 29, 2020 Hr'g Tr. 31, 59, 89. At all times during the search, both Guerrero and the passenger were handcuffed. See id. at 89-91; Gov't Exs. 3-6, Body Camera Footage. Additionally, at all times during the search, both were either inside of a police vehicle or guarded by multiple police officers. See Gov't Exs. 3-6, Body Camera Footage.[2]

---

[2] After the search had already commenced, the officers received a radio call stating that the shooter was wearing "all black" and had run down Cranston Street. See Gov't Ex. 3, Sherrill Body Camera, at 0:55. Due to the timing of the radio call, the Court does not consider this in its analysis.

3

III. Discussion

Guerrero argues that the vehicle search violated the Fourth Amendment. See Def.'s Mem. Supp. Mot. Suppress 2, ECF No. 7-1. The Government contends that the search was justified by concerns for officer safety under Michigan v. Long, 463 U.S. 1032 (1983). Mem. Supp. Gov't Opp'n 7-8, ECF No. 12-1. The Court agrees with Guerrero.

"On a motion to suppress evidence seized on the basis of a warrantless search, the presumption favors the defendant, and it is the government's burden to demonstrate the legitimacy of the search." United States v. Serrano-Acevedo, 892 F.3d 454, 457 (1st Cir. 2018) (citation and quotations omitted). "Subject to limited exceptions, warrantless searches of private property are per se unreasonable." United States v. Lopez, 380 F.3d 538, 543 (1st Cir. 2004) (citing California v. Acevedo, 500 U.S. 565, 580 (1991)).

One such exception was identified in Long: "[T]he [warrantless] search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons."

4

463 U.S. at 1049-50 (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). Additionally, under United States v. Lott, 870 F.2d 778 (1st Cir. 1989), the officers must have in fact been motivated by officer safety; a search conducted solely for investigatory purposes cannot be justified by objective circumstances indicating dangerousness. See id. at 783-84. Thus, the Government bears the burden of showing both that the officers were subjectively motivated by officer safety and that the motivation was objectively reasonable.

   1.   Objective Prong

   Breaking down the rule from Long, it is clear that a protective sweep is unjustified unless the facts known to the officers established reasonable suspicion of at least three factors: (1) the automobile contained a weapon; (2) the suspect(s), if given the opportunity, would have used that weapon against the officers; and (3) the suspect(s) would have, at some point in the near future, been able to access the vehicle. See 463 U.S. at 1049-50.

   The first two requirements are easily met. Based on the BMW's temporal and geographic proximity to the gun shots, the direction in which the BMW was travelling (away from the location of the gun shots), Guerrero's reckless and evasive driving, and his lack of compliance with officer commands, there was reasonable suspicion to believe that the car contained a weapon and that Guerrero or

5

his passenger would have used that weapon against the officers if given the chance. See Lott, 870 F.2d at 785 (noting relevance of whether "police had reason to suspect the presence of firearms based on the type of crime suspected"); compare United States v. Martinez, 762 F.3d 127, 132 (1st Cir. 2014) ("[Defendant's] involvement in past crimes, [the fact that a wake for a murdered gang member had occurred that evening nearby], the reaction of a car full of gang members when a police car approached, and the refusal to keep hands visible all pointed toward a reasonable likelihood that [the defendant] was armed and potentially dangerous."), and United States v. McGregor, 650 F.3d 813, 821 (1st Cir. 2011) (holding protective sweep permissible where, following gang shooting, car sped towards hospital where victims were being treated, running a red light, and officers recognized occupants, who were nervous and out of breath, as gang members with firearms offenses), with United States v. McKoy, 428 F.3d 38, 40 (1st Cir. 2005) ("dangerousness of the neighborhood and [suspect's] nervous appearance and movements inside the car [were] insufficient to justify the frisk").

But the requirement that the suspects could have accessed the vehicle is trickier, as both Guerrero and the passenger were handcuffed and under police control at the time of the search. To properly analyze this access requirement, a brief summary of the two categories of warrantless vehicle searches justified by

6

officer safety – searches incident to arrest and protective sweeps during investigatory stops – is necessary.

In Chimel v. California, 395 U.S. 752 (1969), the Supreme Court established the now-familiar rule for searches incident to arrest: "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." Id. at 762-63. Additionally, the officer may search "the area within his immediate control . . . ." Id. at 763 (quotations omitted). Applying that principle to the automobile context, the Court in New York v. Belton, 453 U.S. 454 (1981), held that when an officer "has made a lawful custodial arrest of the occupant of an automobile, [the officer] may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and "any containers found within . . . ." Id. at 460.

But courts embraced this rule a little too enthusiastically, "treat[ing] the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of Chimel." Thornton v. United States, 541 U.S. 615, 624 (2004) (O'Connor, J., concurring in part). As part of this overreach, courts had allowed searches even where the arrestee was "handcuffed and secured[,]" thus rendering it "improbable" that the arrestee could have

7

accessed weapons in the vehicle. Arizona v. Gant, 556 U.S. 332, 342 (2009) (citations omitted). The Gant Court reigned in these excesses: "[T]he Chimel rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Gant, 556 U.S. at 343.

That holding is directly on point here. At the time of the vehicle search, Guerrero was handcuffed and under police control. The officers considered him to be under arrest and were not planning on releasing him. Only if Guerrero were a "combination acrobat and Houdini" could he have accessed and utilized a weapon located inside of a backpack in the car. See 3 Wayne R. LaFave, Search and Seizure § 6.3(c) (6th ed. 2020). Therefore, the Government wisely concedes that Guerrero "would not be reentering the motor vehicle . . . ." Mem. Supp. Gov't Opp'n 8.

Instead, the Government contends that the search was justified because the juvenile passenger could have reentered the vehicle and retrieved a weapon. See id.; Nov. 2, 2020 Hr'g Tr. 18, 21, 25, 43-44. As discussed, the passenger was handcuffed and under officer control at all relevant times. There was no reasonable possibility that he could have broken free, ducked and dodged the officers surrounding the BMW, and obtained a weapon. But the Government contends that a protective sweep of the BMW was nonetheless justified because officers were planning to later

8

release the passenger, at which point he could have accessed the vehicle. See Nov. 2, 2020 Hr'g Tr. 18, 21, 25, 43-44; Mem. Supp. Gov't Opp'n 8.

Therefore, this inquiry does not live within the framework of searches incident to arrest, but rather that of vehicle "frisks," a world born from Terry. As every first-year law student learns, and every police recruit is taught, where an officer has reasonable suspicion to believe "that criminal activity may be afoot and that the [persons in question] may be armed and presently dangerous," the officer may "conduct a carefully limited search of the outer clothing of such persons . . . ." Terry, 392 U.S. at 30. Extending that principle to roadside encounters, the Supreme Court later held that "the [warrantless] search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Long, 463 U.S. at 1049-50 (quoting Terry, 392 U.S. at 21).

But does Gant's limitation - that a search for weapons is permissible only where the arrestee is unsecured and near the

9

vehicle – apply to protective sweeps pursuant to Long?  The First Circuit says "no", albeit in a brief, footnoted discussion:

> Gant explicitly limited its holding to a search-incident-to-arrest setting, leaving Long intact. See, e.g., [Gant, 556 U.S. at 346-51]; see also id. at [352] (Scalia, J., concurring) (explaining that "[w]here no arrest is made, we have held that officers may search the car if they reasonably believe 'the suspect is dangerous and . . . may gain immediate control of weapons,'" adding that "[i]n the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed") (quoting Long, 463 U.S. at 1049).

McGregor, 650 F.3d at 825 n.5; see also United States v. Diaz, 519 F.3d 56, 63 (1st Cir. 2008) (holding pre-Gant that "safety concerns justify [a] search where the vehicle's occupant [is] only temporarily detained under Terry and may imminently regain control of the vehicle and its contents").

This Court interprets the above-quoted footnote as permitting the police to presume that a non-arrested suspect, even if handcuffed at the time and a juvenile, will have, at least theoretically, an opportunity to reenter the vehicle.  Thus, the temporary restraint of the passenger here, while clearly at the outer limits of the Supreme Court's holding, did not restrict the officers' authority to conduct such a protective sweep pursuant to Long.  The objective prong is therefore satisfied.

10

2.  Subjective Prong

Under current First Circuit precedent, however, objective reasonableness is not enough. "Although <u>Terry</u> and <u>Long</u> speak in terms of an objective test ('reasonableness') for determining the validity of an officer's frisk for weapons, we do not read those cases as permitting a frisk where, although the circumstances might pass an objective test, the officers in the field were not <u>actually</u> concerned for their safety." <u>Lott</u>, 870 F.2d at 783-84. Where a search is "not . . . animated by concerns for safety[, but rather] driven by the understandable - but unconstitutionally applied - curiosity of a seasoned police officer[,]" any resulting evidence must be suppressed. <u>Id.</u> at 785 (quotations omitted).

Subsequent to <u>Lott</u>, the Supreme Court held in <u>Whren v. United States</u>, 517 U.S. 806 (1996), that a vehicle stop justified by a traffic violation but motivated by the officer's desire to investigate other crimes does not violate the Fourth Amendment because "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." <u>Id.</u> at 813.

The First Circuit has noted that "[<u>Whren</u>'s] reasoning casts doubt on <u>Lott</u>'s holding that an officer's subjective fears must be demonstrated to justify a car search under <u>Long</u> . . . ." <u>McGregor</u>, 650 F.3d at 822. <u>Whren</u>'s holding, however, dealt only with the officer's decision to stop the vehicle; vehicle searches were not at issue, and <u>Long</u> was never mentioned. <u>See generally</u> <u>Whren</u>, 517

11

U.S. 806. Therefore, Lott remains good (if vulnerable) law. See McGregor, 650 F.3d at 821-22 ("It is an open question whether Lott's 'actual fear' analysis is consistent with . . . Whren . . . But the government has not raised the issue here, so we will not address it."); United States v. Ivery, 427 F.3d 69, 73 (1st Cir. 2005) ("Having concluded that Lott's actual suspicion requirement is satisfied here, we decline the government's invitation to reconsider the continuing validity of that aspect of Lott in light of [Whren]."); United States v. Nee, 261 F.3d 79, 85-87 (1st Cir. 2001) (declining to consider the government's unpreserved argument that Whren had overruled Lott); see also United States v. Orth, 873 F.3d 349, 358 (1st Cir. 2017) (applying subjective prong from Lott without discussion of Whren).

Several factors indicate that the officers lacked a subjective fear of the sixteen-year-old passenger. Immediately after handcuffing the passenger, and without frisking him, Officer Rosado walked away from him twice, leaving him unattended. See Gov't Ex. 4, at 1:10-1:30.[3] Had the officers been concerned about the passenger's propensity for violence, they would have kept a closer eye on him. Furthermore, no evidence indicated that the passenger was ever frisked. "If the police truly feared that the [passenger] w[as] armed and dangerous . . . , they would have made

---

[3] Of course, as previously described, the passenger was fully secured by the time the vehicle search commenced.

12

sure, by a Terry frisk, that [he did not have a weapon on his person] and then have proceeded to search the car." Lott, 870 F.2d at 785 (citing Long, 463 U.S. at 1036)). The officers' lack of concern regarding the passenger is unsurprising. From the jump, all eyes (and guns) were vigilantly trained on Guerrero. See Gov't Ex. 5, Lewis Body Camera, at 0:00-0:20. Immediately after handcuffing Guerrero, the officers removed every last little object in his pockets. See id. at 0:57-1:35. This patent disparity between the treatment of the two individuals indicates that the officers were not fearful of the passenger. Moreover, the officers searched the BMW thoroughly, including the trunk. See Long, 463 U.S. at 1049-50 (allowing "search of [only] the passenger compartment").[4] The nature of the search thus demonstrates an eye towards investigation and prosecution, not officer safety. Cf. Lott, 870 F.2d at 785 ("[T]he search was directed towards finding contraband[,]" which "is improper under

---

[4] By the time of the trunk search, the officers had already located the ammunition, arguably giving them probable cause to search the rest of the car for a firearm. See United States v. Dion, 859 F.3d 114, 131 (1st Cir. 2017) ("[P]olice officers may seize and search an automobile prior to obtaining a warrant where they have probable cause to believe that the automobile contains contraband." (citations and quotations omitted)). But, based on the video footage, the Court finds that the trunk search was not an intentional redirection from a pre-ammunition protective sweep to a post-ammunition evidentiary search. Rather, the trunk search was the natural continuation of an ongoing evidentiary mission, and thus weighs mildly against the Government.

13

Terry and Long.").[5]  Lastly, the officers' demeanor, as documented in the body camera footage, does not indicate an actual fear of the passenger.

The Court finds that the officers did not subjectively fear that the passenger would reenter the BMW, obtain a weapon, and wield it against them.[6]  Thus, the search violated the Fourth Amendment, and its fruits are inadmissible at trial.  See United States v. Camacho, 661 F.3d 718, 728 (1st Cir. 2011) (citing Wong Sun v. United States, 371 U.S. 471, 488 (1963) (other citations omitted)).[7]

---

[5] To be clear, the officers' intentions were in many ways admirable, and the Court ascribes no ill will to them.  A large part of the officers' intent seems to have been the general goal of advancing public safety by locating and confiscating illegal firearms. As well intentioned as these officers may have been for public safety, the community caretaking exception does not apply here.  To qualify as community caretaking, an officer's actions "must be distinct from the normal work of criminal investigation." Castagna v. Jean, 955 F.3d 211, 220 (1st Cir. 2020) (citations and quotations omitted); see also Matalon v. Hynnes, 806 F.3d 627, 635 (1st Cir. 2015) ("[Q]uintessential criminal investigation activity [of] pursu[ing] a fleeing felon in the immediate aftermath of a robbery . . . fall[s] far beyond the borders of . . . the community caretaking exception.").  Here, the officers were acting in a standard investigatory mode – with the additional goal of community caretaking – and therefore cannot find refuge in the doctrine.

[6] The Court does not credit the officers' testimony to the contrary.  See Oct. 29, 2020 Hr'g Tr. 32, 91-92.

[7] Due to this conclusion, the Court does not reach Guerrero's other argument that the officers unconstitutionally seized him. See Def.'s Mem. Supp. Mot. Suppress 1-2, ECF No. 7-1.

14

IV. Conclusion

Based on the foregoing reasons, Defendant Juan Guerrero's Motion to Suppress, ECF No. 7, is GRANTED.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
District Judge
Date:  February 26, 2021